# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **BENJAMIN D. HELTON #657503,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | **No. 3:26-cv-385** |
| **v.** | **)** | |
| | **)** | **Judge Trauger** |
| **KENNETH NELSON,** *et al.*, | **)** | **Magistrate Judge Frensley** |
| | **)** | |
| **Defendants.** | **)** | |
| | **)** | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This is a pro se prisoner civil rights case filed by Benjamin D. Helton, an inmate of the Riverbend Maximum Security Institution ("RMSI") in Nashville, Tennessee. (Doc. No. 1).

Plaintiff also has submitted an Application for Leave for Proceed In Forma Pauperis ("IFP Application") (Doc. No. 2), a Motion to Appoint Counsel (Doc. No. 4), and a Motion to Compel (Doc. No. 5).

The court must resolve the filing fee before moving to the required screening of the prisoner complaint.

## I. FILING FEE

Under the Prisoner Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(a), a prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). From a review of Plaintiff's IFP Application and supporting documentation (Doc. Nos. 2, 3), it appears that Plaintiff lacks sufficient financial resources from which to pay the full filing fee in advance. Therefore, his IFP Application (Doc. No. 2) is **GRANTED**.

1

Under § 1915(b), Plaintiff nonetheless remains responsible for paying the full filing fee. The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-plaintiffs the opportunity to make a "down payment" of a partial filing fee and to pay the remainder in installments. Accordingly, Plaintiff is hereby assessed the full civil filing fee of $350, to be paid as follows:

(1) The custodian of Plaintiff's inmate trust fund account at the institution where he now resides is **DIRECTED** to submit to the Clerk of Court, as an initial payment, "20 percent of the greater of – (a) the average monthly deposits to Plaintiff's account; or (b) the average monthly balance in Plaintiff's account for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(b)(1).

(2) After the initial filing fee is fully paid, the trust fund officer must withdraw from Plaintiff's account and pay to the Clerk of this Court monthly payments equal to 20% of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10. Such payments must continue until the entire filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

(3) Each time the trust account officer makes a payment to this court as required by this Order, he or she must print a copy of the prisoner's account statement showing all activity in the account since the last payment made in accordance with this Order and submit it to the Clerk along with the payment. All submissions to the Court must clearly identify Plaintiff's name and the case number as indicated on the first page of this Order, and must be mailed to: Clerk, United States District Court, Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

The Clerk of Court is **DIRECTED** send a copy of this Order to the administrator of inmate trust fund accounts at the RMSI to ensure that the custodian of Plaintiff's inmate trust account

complies with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian of his inmate trust fund account **MUST** ensure that a copy of this Order follows Plaintiff to his new place of confinement for continued compliance.

## II. PLRA SCREENING OF THE COMPLAINT

The complaint is before the court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## A. Section 1983 Standard

Plaintiff brings his claims under 42 U.S.C. § 1983 which creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ."  To state a claim under Section 1983, a plaintiff must allege and show two elements:  (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

## B. Facts Alleged in the Complaint

The allegations of the complaint are assumed true for purposes of the required PLRA screening.

Plaintiff is an "unaffiliated" inmate housed in Unit 5 at RMSI, a minimum security unit. (Doc. No. 1 at 3). Defendants have a practice of placing violent maximum high security inmates in Unit 5, including inmate Ronald Cooper. Defendants were aware that Cooper had committed multiple recent acts of violence against unaffiliated inmates, including sexual assault. Defendants also were aware that the cell door locks in Unit 5 were outdated, worn out, or defective, and "could easily be circumvented using a prison issue inmate I.D. card." (*Id*. at 4).

On January 21, 2025, Plaintiff notified C/O Briggs[1] and Chief Counselor Bates that Cooper had been harassing and threatening Plaintiff.

On April 21, 2025,  Cooper stabbed Plaintiff twenty-two times "in the middle of the night during lockdown hours at 0140am" when Plaintiff was asleep. (*Id*. at 3, 12).

---

[1] Briggs is not named as a Defendant to this action.

After the attack, Defendants placed Plaintiff in Administrative Protective Custody ("APC") "without any hearing or trial which severely limited [his] liberty . . . ." (*Id*. at 4). While in APC, Plaintiff is unable to earn good time credits, continue his education, or hold a prison job. Plaintiff has asked to return to general population or to be removed from APC.

Plaintiff seeks compensatory and punitive damages, declaratory relief, injunctive relief, and costs and fees. (*Id*. at 5).

**C. Analysis**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. The complaint names as Defendants Kenneth Nelson, RMSI Warden; Micheal Keys, RMSI Associate Warden of Treatment; Corvelli Haynes, Associate Warden of Security; Robert Bates, Chief Counselor; and C/O f/n/u Windhem. Plaintiff sues each Defendant in his or her individual and official capacities. (Doc. No. 1 at 3).

The court begins with Plaintiff's Section 1983 claims against Defendants in their official capacities. Because "[o]fficial-capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent,'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)), Plaintiff's official capacity claims against Defendants are actually brought against their employer, the Tennessee Department of Correction ("TDOC"), the entity that operates RMSI.

"TDOC is an arm of the state of Tennessee for purposes of Eleventh Amendment immunity." *Primm v. Tenn. Dep't of Corr.*, No. 3:15-cv-00230, 2017 WL 1210066, at *5 (M.D. Tenn. Mar. 31, 2017) (citing *Owens v. O'Toole*, No. 3:14-cv-02040, 2014 WL 5846733, at *3 (M.D. Tenn. Nov. 12, 2014)). Sovereign immunity therefore applies. *See, e.g., Carter v. Bell*, No. 3:10-0058, 2010 WL 3491160, at *4 (M.D. Tenn. Sept. 1, 2010) (holding that the RMSI Warden

5

"as an employee of [TDOC], represents the State of Tennessee"); *Arauz v. Bell*, No. 3:06-0901, 2007 WL 2457474, at *2 (M.D. Tenn. Aug. 24, 2007) (adopting Report and Recommendation holding that RMSI employees are "employees of [TDOC]"). Tennessee's sovereign immunity protects TDOC from official capacity claims for money damages. *Jones v. Mays*, No. 3:19-cv-00795, 2020 WL 5106760, at *5 (M.D. Tenn. Aug. 31, 2020). Thus, Defendants in their official capacities are immune from Plaintiff's claims for money damages.

However, Plaintiff also seeks injunctive relief from these Defendants. "[D]emands for injunctive relief are properly brought against a TDOC official in his official capacity." *Hall v. Trump*, No. 3:19-cv-00628, 2020 WL 1061885, at *2 (M.D. Tenn. Mar. 5, 2020) (citing *Will*, 491 U.S. at 71 n.10). Thus, those claims are properly before the court and shall proceed as the complaint alleges that a RSMI policy or practice exists of housing known violent inmates in minimum security units.

As for the remaining Defendants, Plaintiff seeks to impose constitutional liability against those individuals because they allegedly failed to protect Plaintiffs from an attack by a fellow inmate. Plaintiff appears to be a convicted prisoner, not a pretrial detainee.[2] This distinction is relevant because the Eighth Amendment's guarantee against cruel and unusual punishment applies to convicted prisoners, while the Fourteenth Amendment's Due Process Clause guarantees the rights of pretrial detainees to be free from punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

The Eighth Amendment to the United States Constitution requires officers to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). Although prison officials have a duty to protect prisoners from assault by other prisoners, the Supreme Court has recognized

---

[2] Plaintiff did not explicitly state in his complaint that he is a pre-trial detainee or convicted prisoner, but the complaint as a whole suggests that Plaintiff is a convicted inmate.

6

that jail and prison officials cannot be expected to prevent every assault before it occurs or to stop every assault in progress before injuries are inflicted. Thus, "a prison official may be held liable under the Eighth Amendment . . . only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. That is, the inmate must show both that the risk of harm is sufficiently "serious," an objective inquiry, and that prison officials acted with "deliberate indifference" to inmate health or safety, a subjective inquiry. *Id*. at 837-38; *Helling v. McKinney*, 509 U.S. 25, 32 (1993).

Here, construed liberally, the complaint alleges that Defendants were aware that a particular inmate, Cooper, posed a threat to Plaintiff's safety and therefore should not be housed in the same housing unit as Plaintiff. The complaint further alleges that Plaintiff had expressed concerns about his safety around this inmate to at least one Defendant prior to the attack. Plaintiff's allegations, if proven, could support a finding that Plaintiff faced a risk of harm sufficiently serious to satisfy the objective component of a failure-to-protect claim.

Additionally, liberally construing the complaint, Plaintiff alleges that Defendants knew about the substantial risk of harm facing Plaintiff but disregarded that risk by allowing the inmate to remain in Unit 5. *Cf. Morgan by next friend Morgan v. Wayne Cnty., Mich.,* 33 F.4th 320, 327 (6th Cir. 2022) ("[a]n official who was unaware of a substantial risk may not be held liable under the Eighth Amendment."); *Young v. Phillips*, No. 3:22-CV-295-TAV-JEM, 2022 WL 4360848, at *3 (E.D. Tenn. Sept. 20, 2022) (finding no viable failure to protect claim under Section 1983 where plaintiff failed to allege that defendant "knew or should have known . . . that [assailant] had any ill intent toward [plaintiff]"). Plaintiff therefore satisfies the subjective component as well, and the failure-to-protect claims against Defendants in their individual capacities survive the required PLRA screening.

The complaint also alleges due process claims under Section 1983 against all Defendants based on Plaintiff's placement in APC wherein Plaintiff is unable to earn good time credits, continue his education, or hold a prison job. It is well-settled, however, that "prisoners have no liberty interest in opportunities to *obtain* good-time credits." *Martin v. O'Brien*, 207 F. App'x 587, 589-90 (6th Cir. 2006) (emphasis added); *see Hansard v. Barrett*, 980 F.2d 1059, 1062 (6th Cir. 1992) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974)) ("The United States Supreme Court has held that inmates have no inherent constitutional right to good time credit."). *See also Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (citing *Meachum v. Fano*, 427 U.S. 215, 229 n.8 (1976)) (holding that "[t]he loss of the opportunity to earn good-time credits, which might lead to earlier parole," does not constitute a constitutionally cognizable liberty interest which triggers the protection of the Due Process Clause"). Consequently, the fact that Plaintiff is not earning all the credits to which he believes he is entitled does not give rise to a claim that his constitutional rights have been violated.[3] *See Anderson v. Rutherford Cnty. Jail*, No. 3:15-cv-01016, 2015 WL 72831165, at \*4 (M.D. Tenn. Nov. 16, 2015) (finding that prisoner-plaintiff failed to state a claim for which relief may be granted under Section 1983 based on the contention that being housed at a county jail deprives him of the opportunity to earn good-time credits at a faster rate).

Plaintiff's allegation that, while in APC, he lacks the ability hold a prison job or participate in rehabilitative or educational programs does not violate the Eighth Amendment of the United States Constitution either. *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) (explaining that "deprivations of this kind simply are not punishments. We would have to wrench the Eighth

---

[3] Importantly, Plaintiff does not allege that Defendants have taken away credits he already has earned. *See Brooks v. Correctional Officer*, No. 22-2077-SHM-tmp, 2022 WL 4826325, at \*9 (W.D. Tenn. Oct. 3, 2022) (differentiating Section 1983 claim that prisoner lost previously-earned good-time credits from a claim that prisoner has been deprived of the right to earn good-time credits in the future; noting that the former type of claim implicates federal due process rights while the latter claim is not cognizable under Section 1983).

Amendment from its language and history to hold that delay of these desirable aids to rehabilitation [such as job and educational opportunities] violates the Constitution."); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) ("Prisoners have no constitutional right to rehabilitation, education, or jobs."). For these reasons, Plaintiff's due process claims fail.

Moreover, insofar as Plaintiff seeks a court order awarding him good-time credits to which he believes he is entitled or early release from custody, he seeks relief that is not available under Section 1983. The United States Supreme Court has made it clear that a Section 1983 action cannot be used to challenge, directly or indirectly, the length or validity of a prisoner's confinement, including deprivations of good-time credit, and that this can only be done using habeas corpus remedies. *Edwards v. Balisok*, 520 U.S. 641 (1997); *Preiser v. Rodriguez*, 411 U.S. 475 (1973); *Heck v. Humphrey*, 512 U.S. 477 (1994); *Wolff v. McDonnell*, 418 U.S. 539 (1974). In summarizing this line of cases, the Supreme Court stated:

> These cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). Thus, Plaintiff may not seek restoration of good-time credits in this action or his release from custody.

Consequently, the court finds that the complaint fails to state due process claims under Section 1983 against Defendants. Those claims will be dismissed.

### III. MOTIONS

Next, Plaintiff has filed a Motion to Appoint Counsel. (Doc. No. 4). The Supreme Court has held that "an indigent's right to appointed counsel . . . exists only where the litigant may lose his physical liberty if he loses the litigation." *Lassiter v. Dep't of Social Servs.,* 452 U.S. 18, 25

(1981). Thus, unlike in criminal proceedings, there is no constitutional right to an appointed counsel in a civil action, such as this action. *Willett v. Wells*, 469 F. Supp. 748, 751 (E.D. Tenn. 1977), *aff'd*, 595 F.2d 1227 (6th Cir. 1979); *see Williamson v. Autorama, Inc.*, No. 91-5759, 947 F.2d 947 (6th Cir. 1991) (citing *Willett* favorably). The appointment of counsel for a civil litigant is a matter within the discretion of the district court and will occur only under exceptional circumstances. *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993).

In support of his request for the appointment of counsel, Plaintiff states that he is indigent and untrained in the law. (Doc. No. 4 at 1-2). This is typical for most pro se prisoner plaintiffs. At this time, the court finds that Plaintiff has not demonstrated exceptional circumstances warranting the appointment of counsel. Thus, his Motion to Appoint Counsel (Doc. No. 4) will be denied without prejudice. Plaintiff may renew his request for counsel later, if appropriate.

Plaintiff also has filed a Motion to Compel Defendant Warden Kenneth Nelson to provide the home addresses of Defendants so that Plaintiff can effectuate service. (Doc. No. 5). This motion is more appropriate for the Magistrate Judge who will be responsible for the case management of this case upon referral. The motion therefore will be held in abeyance pending referral.

### IV. CONCLUSION

Having conducted the screening of the complaint required by the PRLA, the court finds as follows.

Plaintiff's Section 1983 failure-to-protect claims for injunctive relief against Defendants in their official capacities (which are actually claims against TDOC) shall proceed. All other Section 1983 claims against Defendants in their official capacities (TDOC) are **DISMISSED**.

Plaintiff's Section 1983 claims against Defendants in their individual capacities based on their failure to protect Plaintiff state colorable claims under Section 1983 and shall proceed for further development.

10

Plaintiff's Section 1983 due process claims against Defendants in their individual capacities are **DISMISSED**.

Plaintiff's Motion to Appoint Counsel (Doc. No. 4) is **DENIED WITHOUT PREJUDICE**.

Plaintiff's Motion to Compel (Doc. No. 5) is **HELD IN ABEYANCE** for the Magistrate Judge.

As a matter of housekeeping, the docket in this case reflects that certain individuals are Defendants to this action who are not named as Defendants in the complaint. (*See* Doc. No. 1 at 1, Doc. No. 5 at 1). Accordingly, the Clerk is **DIRECTED** to remove from the docket the following individuals as Defendants: Christie Rasbeck, Kayla Solomon, and Samantha Zoffka.

Accordingly, the Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons (AO 440) and USM 285 form) for Defendants Kenneth Nelson, Micheal Keys, Corvelli L. Haynes, Robert Bates, f/n/u Windhem, and TDOC. Plaintiff **MUST** complete the service packets and return them to the Clerk's Office within **30 DAYS** of the entry of this Order. Failure to do so may result in the dismissal of this case. Upon return of the properly completed service packets, the Clerk is **DIRECTED** to issue summonses to the U.S. Marshals Service for service on those Defendants. Fed. R. Civ. P. 4(b) and 4(c)(3).

Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B), this action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pre-trial, non-dispositive motions, to issue a Report and Recommendation on all dispositive motions, and to conduct further proceedings, if necessary, under Rule 72(b), Fed. R. Civ. P., and the Local Rules of Court.

The Magistrate Judge may provide for early, limited discovery, if appropriate, for Plaintiff to determine the full names of Defendant Windhem and obtain the addresses of all Defendants.

The court's determination that the complaint states a colorable claim for purposes of this initial screening does not preclude the court from dismissing any claim at any time for seasons set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude any Defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.

Plaintiff is forewarned that his prosecution of this action will be jeopardized if he should fail to keep the Clerk's Office informed of his current address.

It is so **ORDERED**.

Aleta A. Trauger
United States District Judge

12